18 Civ. 5106

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ILANA ROTHBEIN,

Plaintiff,

-against-

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF EDUCATION; CARMEN
FARINA, former Chancellor of the New York City
Department of Education; KETLER LOUSSAINT
New York City Superintendent District 75; JEANNE
BRADLEY, Principal P94M/The Spectrum School;
JULIA MCCROSSON, Assistant Principal
P94M/The Spectrum School, in their official and
individual capacities; RICHARD CARRANZA,
Chancellor of the New York City Department of
Education, in his official capacity only,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

## ZACHARY W. CARTER

*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-109(H)
New York, New York 10007-2601

*Of Counsel*: Christopher Coyne
*Tel.:* (212) 356-1180

Matter No.: 2018-046832

Table of Contents

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................. 3

ARGUMENT ..................................................................................................... 10

POINT I .............................................................................................. 10

ALL   FEDERAL   CLAIMS   MUST   BE
DISMISSED. ......................................................................... 10

A.   The Process Plaintiff Received More than
Satisfies Due Process Clause Minima......................................... 10

B.   Substantive Due Process Claim Fails. ................................. 12

C.   § 1985 Conspiracy Claim fails as a Matter of
Law. ...................................................................................... 13

D.   The Complaint Fails To Plead A Monell Policy .............................. 15

E.   Immunity................................................................................. 16

POINT II ............................................................................................. 17

DISCRIMINATION   AND   RETALIATION
CLAIMS FAIL.......................................................................... 17

A.   The Motion to Dismiss Standard. ....................................... 17

B.   Application Of The Discrimination Standard –
No Causation........................................................................ 18

C.   Retaliation Claims Fail. ........................................................ 19

POINT III............................................................................................. 20

ALL   STATE   LAW   CLAIMS   MUST   BE
DISMISSED. ......................................................................... 20

A.   Plaintiff Lacks Standing to Sue for an Alleged
Breach of the CBA............................................................................. 20

B.   Contract Claims Must be Dismissed for Failure
to Name a Necessary Party. ............................................................. 22

C.   CSL § 75-b Claim Must be Dismissed. .............................................. 23

POINT IV................................................................................................................. 23

In the event that defendants' motion is denied,
defendants seek a stay of this action. ........................................................ 23

CONCLUSION........................................................................................................... 25

## PRELIMINARY STATEMENT

Plaintiff was an Occupational Therapist ("OT") employed by the New York City Department of Education ("DOE").[1]   Plaintiff was terminated following substantiated findings by the DOE's Office of Special Investigations ("OSI"), that plaintiff had certified in the Special Education Student Information System ("SESIS") that she had provided mandated services to her assigned special education students, when she had not.   On two occasions, Plaintiff certified that she had provided a student with "Sensory Processing Activities" and that during each of these sessions, the "[s]tudent made expected progress toward goal attainment."   In reality, a video recording showed that plaintiff sat in the cafeteria and had no interaction with either student. OSI reached the conclusion that plaintiff falsified records and failed to provide services after interviewing seven witnesses, including plaintiff, and reviewing the video surveillance, which showed that "[a]t no point on either date d[id] [Plaintiff] interact with Student A or Student B."

Plaintiff claims that the OSI investigation was poor, and that the witness statements were vague and unspecific.   Yet plaintiff does <u>not</u> contest OSI's ultimate conclusion that she had no interaction with either student on the dates in question.   Instead, plaintiff argues that she was "observing" them from a distance and that she subjectively "believed" her SESIS entries were appropriate. The "sensory processing activities" that plaintiff claimed to have provided, however, require direct "one-on-one" <u>interaction</u> with a student.   Plaintiff admittedly did not have any interaction.   Plaintiff also claims that an Assistant Principal ("AP") indirectly reported plaintiff's misconduct to OSI, possibly because of plaintiff's sexual orientation, of which the AP was purportedly aware, or possibly in retaliation for plaintiff's complaint about the

---

[1] DOE is, formally, the Board of Education of the City School District of the City of New York.

AP's prior allegations that plaintiff was not servicing her students.  Finally, plaintiff argues that she did not receive sufficient process associated with her termination.

Plaintiff commenced this action under §§ 1983, and 1985, alleging that her termination violated her substantive and procedural Due Process Clause rights, and constituted a conspiracy to interfere with her civil rights.  Plaintiff also raises many state and city claims, including sexual orientation discrimination and retaliation in violation of the SHRL and CHRL, retaliation under CSL § 75-b, breach of contract, and tortious interference with contract claims.[2]

Defendants now move to dismiss the Complaint in its entirety.  First, plaintiff's procedural due process claims must fail, because the pre-deprivation and post-deprivation process available to plaintiff under the collective bargaining agreement ("CBA") between DOE and plaintiff's union, the UFT, provided more than ample process under the Constitution. Plaintiff's substantive Due Process claim is also patently deficient, because her termination for gross misconduct is not sufficiently egregious to state a claim.

Next, plaintiff's § 1985 conspiracy claim also fails.  First, the Complaint is devoid of factual allegations sufficient to establish a purported conspiracy or "meeting of the minds" to discriminate against plaintiff based on her sexual orientation.  Moreover, any such claim is absolutely barred by the intra-corporate conspiracy doctrine.

Third, the Complaint fails to state a claim of sexual orientation discrimination or retaliation under the SHRL and CHRL.  Plaintiff has failed to plausibly allege that defendants were even aware of her sexual orientation.  The defendants' lack of knowledge is a complete end

---

[2] As used in this memorandum, "§ 1983" and "§ 1985" refers to 42 U.S.C. §§ 1983, 1985; the Due Process Clause refers to clauses in both the 14th Amendment of the United States Constitution and the New York State Constitution, "IDEA," to the Individuals with Disabilities Education Act, 20 U.S.C.S. §§ 1400, et seq., "SHRL" the New York State Human Rights Law, New York Executive Law §§ 290, et seq.; "CHRL" to the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, et seq.; and "CSL" to New York Civil Service Law.

to her discrimination claim.  Moreover, plaintiff has not plausibly alleged that similarly situated comparators exist who engaged in similar misconduct, but were treated better than plaintiff. Plaintiff's retaliation claims also fail, because the reports regarding plaintiff's deficient performance began <u>prior</u> to plaintiff's complaint regarding AP McCrosson.

Fourth, plaintiff's breach of contract and tortious interference claims must be dismissed, because plaintiff lacks standing to bring such a suit.  The UFT, not plaintiff, is a party to the CBA, the operative contract in this case.  A union member has no individual right to enforce the terms of a CBA except through their union.  Moreover, any such claim would need to be dismissed for plaintiff's failure to name a necessary party, that is, the UFT. Her CSL § 75-b claim must also be dismissed, as plaintiff has not exhausted her administrative remedies and did not engage in any protected conduct under the statute.

Finally, should the Court deny defendant's motion to dismiss, this matter should be stayed until the resolution of her pending Article 78 proceeding in New York State Supreme Court.  Plaintiff has raised practically identical factual allegations and many of the same causes of action in this proceeding. Because the factual allegations in the Complaint are "inextricably intertwined" with those in the Article 78 Petition, a stay of this matter is warranted.

Accordingly, the Complaint must be dismissed in its entirety.

## <u>STATEMENT OF FACTS</u>[3]

Plaintiff was employed by DOE as an occupational therapist from October, 2013, until October 4, 2017.  Complaint ¶ 6.  On or about September, 2014, she was assigned to P94M/The Spectrum School ("Spectrum").  <u>Id.</u> ¶¶ 32-33.  As an occupational therapist, plaintiff

---

[3] This statement of facts is derived from the material factual allegations set forth in the Complaint, filed June 7, 2018 ("Complaint"), and the Declaration of Christopher Coyne, dated August 20, 2018 ("Coyne Decl."), and its exhibits.  Those facts, but not the conclusions, will be assumed to be true solely for the purpose of this Motion to Dismiss.

was responsible for, among other things, developing and implementing students' Individualized Education Plans ("IEP").  Id. ¶ 34.  Public school systems, such as the DOE, are required to create and implement IEPs for children receiving special education services pursuant to the IDEA.  To verify the implementation of a student's IEP requirements, school staff members who are providing these services are required to enter and certify the services that they provide in the SESIS system.  Entries in this system are used by DOE to request reimbursement, including Medicaid reimbursement, from New York State or the Federal Government.  See NYS Department of Health and NYS Education Department, Preschool/School Supportive Health Services Program (SSHSP) ("Medicaid Handbook"), passim, excerpts of which are annexed to the Coyne Decl. as Exhibit "1."  Part of Plaintiff's responsibilities included making SESIS entries to verify the services she had provided to her assigned students.  See Complaint ¶¶ 58-65.

Plaintiff claims that she was the only openly gay employee at Spectrum. Complaint ¶ 38.  Starting on or about September 2016, AP Julia McCrosson began working at Spectrum.  Id. ¶ 40.  Plaintiff claims that once AP McCrosson began "consistently" working at Spectrum, the AP accused plaintiff of "not being with a student during a session."  Id. ¶¶ 40-42. Plaintiff interpreted this as discriminatory treatment based on her sexual orientation.  Id. ¶ 41.

In January, 2017, plaintiff spoke with a UFT representative and indicated that she wanted to complain about AP McCrosson's behavior.  Complaint ¶ 43.  On January 9, 2017, plaintiff and her UFT representative met with Spectrum Principal Jeanne Bradley, to discuss plaintiff's complaint.  Id. ¶ 46.  At the meeting, Plaintiff complained that AP McCrosson had falsely accused plaintiff of not servicing her students, and further complained of other completely unspecified "discriminatory" treatment.  Id. ¶ 46.  The Complaint does not indicate that plaintiff told Principal Bradley that she believed this treatment was based on her sexual

orientation.

On January 19, 2017, AP McCrosson sent an email to all staff at Spectrum instructing everyone, except two teachers, to report to the Spectrum Cafeteria at 8:10 a.m. to receive students and safely escort them into the school building.  Complaint ¶ 50; Email from AP McCrosson, dated January 19, 2017 ("McCrosson Email"), a copy of which is annexed to the Coyne Decl. as Exhibit "2."  Plaintiff was not scheduled to work with her students between 8:10 and 8:40 a.m., but after receiving the McCrosson Email, plaintiff revised her schedule to indicate that she would be providing mandated services to her students during this time-period.  Complaint ¶¶ 51-52.  The McCrosson Email did <u>not</u> require plaintiff to revise her schedule or provide IEP services during this time-frame, it only asked school staff to assist with getting students off the school bus and into the school building.  <u>See</u> McCrosson Email.

On February 1, 2017, plaintiff's assigned student was absent from school.  <u>See</u> Complaint ¶ 97-98; OSI Report, dated June 8, 2017 ("OSI Report"), a copy of which is annexed to the Coyne Decl. as Exhibit "3."  Notwithstanding this absence, plaintiff certified that she had provided occupational therapy to her assigned student during two thirty-minute increments.  <u>See</u> OSI Report; SESIS Entries, copies of which are annexed to the Coyne Decl. as Exhibit "4."  Plaintiff described these sessions as "student absent."  <u>Id.</u>

On February 6, 2017, plaintiff submitted SESIS entries indicating that she had provided "occupational therapy" to Student A[4] from 8:10 a.m. until 8:40 a.m.  SESIS entries, Ex. "4"; OSI Report, Ex. "3; <u>see</u> Complaint ¶¶ 56-62.  Plaintiff certified that during this period she had provided "Sensory Processing activities – CPT Code 97533" to Student A, and that he had "made expected progress toward goal attainment."  <u>Id.</u>  "Sensory processing activities – CPT

---

[4] The students' names are confidential and they are referred to as Student "A" or "B."

Code 97533" is defined as:

> Sensory integrative techniques to enhance sensory processing and promote adaptive responses to environmental demands, **direct (One-on-One) patient contact by the provider**, Each 15 Minutes

Medicaid Handbook, at 67; see also Step 2 Grievance Decision, dated January 23, 2018, ("Step 2 Decision"), a copy of which is annexed to the Coyne Decl. as Exhibit "5" (noting "one-to-one" student interaction requirement under CPT Code 97533).

Plaintiff admits that she did not engage in "one-on-one" interaction with Student A during this period, however.  See OSI Report; Complaint ¶¶ 55-56.  Instead, plaintiff claims that she had "positioned herself in the cafeteria where she would have the best vantage point to observe students entering and exiting" the cafeteria.  Complaint ¶ 55.  Indeed, the OSI report noted that video surveillance documented plaintiff's complete failure to interact with Student A at all during this period.  OSI Report, Ex. "3," at 4.

On February 7, 2017, plaintiff engaged in identical conduct and once again certified that she had provided sensory processing activities to Student B between 8:10 a.m. and 8:40 a.m., and that this student had also "made expected progress toward goal attainment." SESIS entries, Exhibit "4"; OSI Report, Ex. "3; see also Complaint ¶¶ 56-62.  Once more, plaintiff admits that, in reality, she "observe[d]" Student B from a distance and had no interaction with her student at all during this period.  Complaint ¶¶ 55-56; OSI Report, Ex. "3."

On or about February 14, 2017, OSI began an investigation into allegations that Plaintiff was not providing mandated services to her students despite claiming to have done so in SESIS. Complaint ¶ 67. The OSI investigation was initiated following a complaint from Principal Bradley, but Plaintiff "belie[ves]" AP McCrosson first reported the complaint to Principal Bradley, who then reported it to OSI. See id. ¶¶ 67; 101.  Plaintiff also "belie[ves]" that

Principal Bradley informed AP McCrosson of Plaintiff's January, 2017, complaint.  Id. ¶ 70.  No other factual allegations concerning this claim are provided, however.

OSI interviewed six staff members during their investigation, all of them reported multiple instances in which they or others observed plaintiff "not doing her job" and not providing services to her assigned students.  OSI Report, Ex. "3."  OSI reviewed Student A and Student B's IEPs, which required that they receive occupational therapy three times per week and two times per week, respectively. Id. at 3. The investigation also reviewed Plaintiff's SESIS entries on February 6, and 7, in which plaintiff certified that she had provided "sensory processing activities" to special education Students A and B.  Id.  Next, OSI reviewed school surveillance footage for both dates, which "show[ed] Ms. Rothbein sitting in the cafeteria.  At no point on either date d[id] she interact with Student A or Student B."  OSI Report at 4.  Finally, OSI interviewed plaintiff and provided her an opportunity to respond to the allegations and significant evidence of misconduct.  Complaint ¶ 72-73.  Following their review of the testimonial and video evidence, OSI substantiated the claims that plaintiff had "failed to provide services and falsified her entries on SESIS."  OSI Report at 4.  OSI recommended "strong disciplinary action, including possible termination" be taken.  Id.; Complaint ¶ 80.

Although plaintiff admits that she did not interact with these two special education students, plaintiff still disputes the statements made by her colleagues to OSI and claims that the investigation, although right on the facts, was procedurally defective.  See Complaint ¶¶ 55-56, 77.  Similarly, although plaintiff concedes that she merely "observed" her students from a distance, she complains that she has not received the "entirety" of the video footage showing her doing just that.  Id. ¶¶ 55-56, 79.  In any event, it is undisputed that plaintiff did not engage in "one-on-one" interaction with the special education students, an explicit

requirement of CPT Code 97533.  Medicaid Handbook, at 67; Step 2 Grievance Decision at 2.

On September 8, 2017, plaintiff received a copy of the OSI report from Principal Bradley.  Complaint ¶ 82.  Principal Bradley also requested plaintiff attend a "due consideration" meeting, with counsel, on September 28, 2017.  Id.  On September 20, 2018, plaintiff's attorney sent a letter to DOE concerning her claims of discrimination and retaliation.  Id. ¶ 83.  At the September 28th meeting, plaintiff disputed the OSI report and claimed that she believed she was acting in compliance with the McCrosson Email, and had submitted her false SESIS entries in good faith.  Id. ¶ 87.  Plaintiff now claims that she was not trained on CPT Codes and would input whatever she "believed would best reflect" her actions, essentially admitting that she was submitting erroneous SESIS entries for years and purportedly had no idea how to perform this critical function of her role.  See id. ¶ 60-63.  DOE did not accept this purported excuse.

On October 4, 2017, plaintiff was notified by letter that her employment had been terminated.  Complaint ¶ 89.  In this letter, Superintendent Louissaint informed plaintiff that following review of the OSI report, plaintiff's comments at her September 28th due consideration meeting, and input from Principal Bradley, her immediate termination for misconduct was appropriate.  Id.  Plaintiff also received a "problem code" in her DOE employment record.  Id. ¶ 90; see also letter from DOE to plaintiff, dated October 4, 2017, ("Termination Letter") a copy of which is annexed to the Coyne Decl. as Exhibit "6."

The contract between the UFT and the DOE covering employees in the title of Occupational Therapist ("CBA"), contains a three-step disciplinary process culminating in arbitration.  CBA Art. 18 and 19, a copy of which is annexed to the Coyne Decl. as Exhibit "7."  The first step of this process is to file a grievance with the head of the school.  CBA Art. 18.  The second step is an appeal to the Chancellor.  The third and final step of the process is arbitration,

which can <u>only</u> be requested by the union.  CBA, Art. 18(C).  The employee is entitled to bring counsel of her choice to any and all of the steps.  <u>See</u> CBA, Art. 18(B)(1).  Employees who are terminated may seek review of their termination by engaging in this process post-discharge.  CBA Art. 19.

On October 23, 2017, plaintiff attended a Step 1 termination grievance meeting with Principal Bradley and her union counsel.  Complaint ¶ 94.  After this meeting, plaintiff was purportedly told by UFT that they would not proceed to a Step 2 Grievance Conference.  Plaintiff successfully appealed her union's initial decision in an internal union process.  <u>Id.</u> ¶ 96.

On January 5, 2018, plaintiff appeared with union counsel for a Step 2 Conference before Chancellor's representative Marcel Kshensky.  Complaint ¶ 97.  At the conference Mr. Kshensky noted that plaintiff's assigned student on February 1, 2017, was absent. <u>id.</u> ¶¶ 97-99.  After hearing arguments from both sides, Mr. Kshensky concluded that:

> On the SESIS encounter attendance form [Plaintiff] indicated that she was providing "sensory processing activities" to the students on the dates in question, which is Current Procedural Terminology (CPT) Code 97533.  However, CPT 97533 **requires direct one-to-one contact between the student and the provider.**  In addition to the witnesses indicating that the grievant was not interacting with her students, the grievant stated at the instant conference that she was "observing" her students from afar.  Clearly, her notes contradict her own statements at the instant conference.

Step 2 Grievance Decision, Exhibit "5."  The Chancellor's representative determined that Plaintiff was terminated for good and sufficient reason and only after the Superintendent gave the matter due consideration.  <u>Id.</u>  Furthermore, Mr. Kshensky found that plaintiff had received all the process due under the CBA with regard to her termination, and "where the employee's behavior is so egregious as to warrant immediate termination, as in the instant matter,

progressive discipline is not necessary." Id.; see also Complaint ¶ 103. Thus, Plaintiff's termination was upheld at Step 2. Id. Following the Step 2 Grievance Decision, the UFT did not appeal the decision to arbitration, the third and final step of the CBA grievance process. Complaint ¶¶ 109-10.

On February 2, 2018, plaintiff filed an Article 78 proceeding in New York State Supreme Court, New York County, challenging her termination. See Article 78 petition, filed February 2, 2018, a copy of which is annexed (without exhibits) to the Coyne Decl. as Exhibit "8." In the Petition, plaintiff alleges, as she does here, that her termination violated her due process rights, her CBA rights, was the result of discriminatory and retaliatory animus, and was arbitrary and capricious. Petition, Exhibit "8," ¶¶ 73, 74, 76, 80, 82-83, 86, 87, 94, 96-97.

On June 8, 2018, plaintiff filed the instant Complaint.

## ARGUMENT

### POINT I

### ALL FEDERAL CLAIMS MUST BE DISMISSED.

**A.     The Process Plaintiff Received More than Satisfies Due Process Clause Minima.**

To sustain a § 1983 claim based on an alleged violation of due process, a plaintiff must show that (1) she possessed a liberty or property interest protected by the Constitution or federal statutes and (2) she was deprived of that liberty or property interest without due process. Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). There are two primary Due Process Clause interests cognizable in this case, a property interest in plaintiff's job and a liberty interest in reputation. With respect to the deprivation of either interest, the process provided plaintiff was more than ample to meet constitutional minima. See Faghri v. Univ. of Conn., 621 F.3d 92, 10 (2d Cir. 2010) ("Even upon termination . . . the employee is entitled only to 'oral or

written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.") (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)).

Here, the pre-termination and post-termination process plaintiff received more than satisfies the Constitution.   First, on September 8, 2017, prior to plaintiff's termination, she was presented with the OSI Report, which outlined her misconduct and recommended termination and offered her an opportunity to respond to the allegations.   See Complaint ¶¶ 75-82. DOE then scheduled a "Due Consideration" meeting with plaintiff, her union representative, and an attorney from DOE, to discuss the charges levied against her.   Id. ¶¶ 82-87.   On September 28, 2017, plaintiff attended the "Due Consideration" meeting and had an opportunity to present her side of the story regarding the allegations of misconduct.   Id. ¶ 87. This pre-termination process, alone, is more than sufficient to satisfy the requirements of the Due Process Clause.  See Loudermill, 470 U.S. at 545 (notice of the allegations of misconduct, an explanation of the employer's evidence, and an opportunity to be heard is all that the Due Process Clause requires); see also Faghri, 621 F.3d at 99-100; O'Connor v. Pierson, 426 F.3d 187, 198-99 (2d Cir. 2005) ("Because pre-deprivation process serves a limited function, the Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond.") Hubbard v. Hanley, 2010 U.S. Dist. LEXIS 46550 at *13-14 (S.D.N.Y. May 12, 2010).

Plaintiff was also provided, and used, post-termination process, namely the grievance process under the CBA.  Through her union, plaintiff engaged both Step 1 and Step 2 of this process to dispute both the decision to terminate her employment, as well as the process she had received associated with that termination.  See Step 2 Grievance Decision.  Her union did not, however, appeal her adverse Chancellor decision to arbitration (Step 3).   Complaint

¶¶ 109-10.  This too provides more than the sufficient process under the Constitution.  See Hubbard, 2010 U.S. Dist. LEXIS 46550 at *13-14 (Step 2 hearing provided to a unionized City employee was "adequate process" because "the law requires little more than notice and an opportunity to be heard"); accord O'Connor, 426 F.3d at 198 (CBA grievance procedures generally provide adequate post-deprivation process) (citing cases).  Accordingly, all of plaintiff's procedural Due Process claims must be dismissed.

**B.      Substantive Due Process Claim Fails.**

A substantive due process claim must "allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).  This conduct "must be truly brutal and offensive to human dignity." Lombardi v. Whitman, 485 F.3d 73, 79 (2d Cir. 2007).  None of the allegations in the Complaint even come close to satisfying this exacting standard.  As discussed at length above, Plaintiff was terminated following a substantiated investigation in which OSI concluded that plaintiff had submitted SESIS entries indicating that she had provided mandated services to her assigned special education students, when, in fact, she sat in the cafeteria and did nothing.  See OSI Report, Exhibit "3."  OSI reached this conclusion after interviewing seven witnesses, including plaintiff, and reviewing the objective video surveillance.  Plaintiff does not dispute her conduct, but rationalizes her behavior by claiming that she was "observing" the students, rather than interacting with them, and that she entered the erroneous SESIS entries in "good faith." Complaint ¶ 64.  Plaintiff's misconduct, of course, denied her assigned special education students their mandated occupational therapy sessions, something they would only receive 2-3 times per week in 30-minute increments.  Although plaintiff complains, at length, that termination is too severe for her admitted misconduct, she seemingly forgets what resulted from

her behavior, students in need were deprived of necessary services.   While plaintiff is understandably upset with her termination, it is unclear how DOE's decision to dismiss an employee who compromised the agency's central mission of servicing students, particularly vulnerable and high-need students, is "shocking to the contemporary conscience."   This is particularly true where the process utilized for plaintiff's termination is derived directly from the CBA.   See CBA, Art. 19, Coyne Decl.. Ex. "7."   Plaintiff's substantive due process claim is simply absurd and lacks any basis in law or fact.   It must be dismissed.

It need only be added that plaintiff cannot, as here, simply "make reference to the broad notion of substantive due process to bring a claim that is covered by another, more specific constitutional provision."   Cherry v. New York City Hous. Auth., 2017 U.S. Dist. LEXIS 161830, at *69-71 (E.D.N.Y. Sept. 29, 2017).   Plaintiff's substantive due process claim, broadly read, seeks to remedy the same harm challenged by plaintiff's procedural dispute with her termination.   See Complaint ¶ 174 (substantive due process claim aimed at remedying "[t]he circumstances of defendant DOE's termination of plaintiff's employment.").   As such, it must be dismissed. Id.; see also Rother v. NYS Dep't of Corr., 970 F. Supp.2d 78, 100 (N.D.N.Y. 2013).

## C.   § 1985 Conspiracy Claim Fails as a Matter of Law.

Plaintiff also asserts a claim pursuant to § 1985, alleging that DOE and its employees, the individual defendants, conspired to violate plaintiff's constitutional rights because of her sexual orientation.   To state a claim under § 1985(3), a plaintiff must plausibly allege "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, and (3) an act in furtherance of the conspiracy (4) whereby a person is deprived of any right of a citizen of the United States."   Rosenberg v. City of New York, 2011 U.S. Dist. LEXIS 112818, at *36 (E.D.N.Y. Sept. 30, 2011) (citing Brown v. City of Oneota, 221 F.3d 329, 341 (2d Cir. 2000)).   The purported conspiracy must

entail "class-based animus," which has been narrowly construed to concern "groups with immutable characteristics comparable to race, national origin, religion, or gender." David v. Local 801, Danbury Fire Fighter Assn, 899 F. Supp. 78, 79-80 (D. Conn. 1995); accord Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  Broad claims of discriminatory conspiracy will not suffice, and the Complaint must allege "some factual basis supporting a meeting of the minds" to engage in unlawful conduct.  Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003). Finally, even where sufficient factual allegations are pled, under the intra-corporate conspiracy doctrine, "[t]here can be no conspiracy under Section 1985(3) . . . where the 'persons' alleged to be engaged in the conspiracy are a corporation and its agent." Aggarwal v. N.Y.C. Health & Hosp. Corp., 2000 U.S. Dist. LEXIS 1367, at *24-25 (S.D.N.Y. Feb. 10, 2000).

Here, plaintiff's § 1985 claim fails for a multitude of reasons.  First, the Complaint does not plausibly allege that the individual defendants conspired to terminate plaintiff because of her sexual orientation.  Indeed, plaintiff does not plead any facts that would establish defendants were even aware of her sexual orientation whatsoever, other than plaintiff's own subjective conclusion.  Rather, plaintiff provides conclusory claims that defendants "knew" she identified as gay or that she was "openly" gay.  See Complaint ¶¶ 38, 185.  The Complaint is devoid of facts regarding how any of the individual defendants could even be aware of how plaintiff self-identifies.  Moreover, there is no claim that any of the individual defendants ever made derogatory comments about anyone's sexual orientation, let alone plaintiff.  In sum, there are no facts in the Complaint to suggest the requisite "meeting of the minds" necessary to establish a conspiracy claim.

Finally, even assuming arguendo, that the Complaint included sufficient factual allegations regarding her § 1985 claim, it would still be dismissed pursuant to the intra-corporate

conspiracy doctrine.   Simply put, there can be no § 1985 conspiracy where, as here, the purported conspirators are a governmental entity and its employees.  Aggarwal, 2000 U.S. Dist. LEXIS 1367, at *24-25; Rosenberg, 2011 U.S. Dist. LEXIS 112818, at *37-38 ("The individual defendants here are all employees of the same municipal entity, the Department of Education, and therefore the intra-corporate conspiracy doctrine would apply.").  This too an absolute end to plaintiff's § 1985 claim.

**D.      The Complaint Fails To Plead A Monell Policy**

To hold a municipality liable, a § 1983 plaintiff must plead and prove that the alleged constitutional violation was directly caused by a municipal policy.  Monell v. N.Y.C. Department of Social Services, 436 U.S. 658, 691-94 (1978).  To show a policy, plaintiff must show that the decision at issue was made by a policy maker or that a preexisting policy of the municipality caused the deprivation.  Such a preexisting policy may not be shown by simply proving a single instance of unconstitutional conduct.  See Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality).  Here, the Complaint does not mention a policy of the City or DOE which caused plaintiff to be deprived of a liberty or property interest.  Nor does plaintiff identify a purported policy-maker of the City.  Plaintiff has simply objected to her termination, alone, and the process she received related to her termination.  Plaintiff does not even dispute engaging in the underlying conduct which led to her termination, she simply offers the Court rationalizations for her misconduct and claims that termination was too severe.  Plaintiff's excuses and explanations are irrelevant, however, and cannot establish a violation of the Constitution or otherwise state a Monell policy.  As such, all § 1983 claims against the City, DOE, and the individual defendants in their official capacities must be dismissed.

It need only be added that a discrimination case is not a forum for re-trying a plaintiff's termination; it focuses only on the reasons why the plaintiff was terminated and

whether it was discriminatory animus or not. <u>McPherson v. N.Y.C. Dep't of Educ.</u>, 457 F.3d 211, 216 (2d Cir. 2006). The allegations here are that the DOE believed, after an OSI report, that plaintiff had utterly failed to perform her duties and had lied in SESIS about that failure. DOE is alleged to have terminated plaintiff for this failure and plaintiff has not alleged anything remotely resembling pretext; that is that the reasons were false and that discrimination was the real reason. Thus, the discrimination and retaliation claims must be dismissed.

**E.      Immunity**

Qualified immunity protects a government official who reasonably believes that the official's action is in accordance with the Constitution. This immunity shields an individual from suit where the conduct does not violate clearly established statutory or constitutional rights. <u>Robison v. Via</u>, 821 F.2d 913, 920 (2d Cir. 1987). The contours of the right allegedly violated must be both clear and certain. <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987). Indeed, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). For example, qualified immunity protects a police chief from a Due Process Clause claim that the chief had provided less pre-termination process than was constitutionally due even though the chief violated State law. <u>Davis. v. Scherer</u>, 468 U.S. 183, 193-94 (1984).

In the instant case, as shown above, the process provided plaintiff far exceeded Constitutional minima and was directly in-line with the CBA. There is no violation of law in this instance, and therefore certainly no knowing violation. No reasonable official could possibly conclude that following the termination and grievance process outlined in the CBA would somehow violate an employee's Constitutional rights. As such, qualified immunity shields the individual defendants to the extent they are sued in their individual capacities.

## POINT II

## DISCRIMINATION AND RETALIATION CLAIMS FAIL.

**A.  The Motion to Dismiss Standard.**

To survive a motion to dismiss, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp v. Twombly, 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief,'" and must be dismissed.  Id. (citation omitted)  While a plaintiff need not plead a prima facie case at the pleading stage, he or she must allege sufficient facts that would allow the Court, in substance, to infer the elements of a prima facie case.  See Acosta v. City of New York, 2012 U.S. Dist. LEXIS 60460 at *15 (S.D.N.Y. 2012).

To establish a prima facie case of discrimination under the SHRL,[5] a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified to hold the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  See Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 (2004); Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 112-13 (1st Dep't 2012).  Similarly, under the CHRL, a plaintiff must "plausibly allege that she was subjected to unequal treatment because of her protected characteristic."  Szewczyk v. City of New York, 2016 U.S. Dist. LEXIS 91856, at *32 (E.D.N.Y. July 14, 2016).

---

[5] Discrimination and retaliation claims under Title VII and the SHRL are analyzed under the same standard.  The Complaint does not include any Title VII claims, but notes that plaintiff will supplement her complaint to include such a claim at a later date. See Complaint ¶ 26.

**B.      Application of The Discrimination Standard – No Causation.**

Plaintiff's discrimination claims fail for a myriad of reasons. First, an indispensable component of any discrimination claim is that the defendants were aware of the plaintiff's protected characteristic.  See Brennan v. Metro. Opera Ass'n, 294 A.D.2d 66, 70-71 (1st Dep't 2001) (no prima facie claim where employer unaware of sexual orientation); Geraci v. Moody-Tottrup, Int'l, 82 F.3d 578, 581 (3d Cir. 1996) ([I]t is counterintuitive to infer that the employer discriminated on the basis of a condition of which it is wholly ignorant.").  Here, plaintiff has not alleged any factual allegations through which the Court could infer defendants' knowledge of her sexual orientation, let alone any animus resulting from such knowledge.  There are no allegations that defendants ever made discriminatory comments regarding plaintiff's sexual orientation or were otherwise made aware of it by plaintiff.  Plaintiff simply repeats the conclusory claim that "[d]efendants knew that plaintiff is gay."  See Complaint ¶¶ 38, 185. Conclusory allegations such as this are not entitled to a presumption of truth, even at the motion to dismiss stage.  See Iqbal, 556 U.S. at 678-79.

Moreover, plaintiff has not alleged that there were any similarly situated comparators.  Mosdos Chofetz Chaim, Inc., v. Vill of Wesley Hills, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011).  For a comparator to be similarly situated to a plaintiff, they must be similar "in all material respects."  Shumway v. United Parcel Serv., 118 F.3d 60, 63 (2d Cir. 1997).  Here, plaintiff suggests that "[u]pon information and belief" AP McCrosson was aware of another therapist who made false SESIS entries, but failed to report this individual to OSI.  See Complaint ¶¶ 48, 66, 147.  This too utterly fails to state a claim.  First, conclusory allegations such as this, based exclusively "upon information and belief" cannot suffice to state a discrimination cause of action. See Ludwig's Drug Store, Inc. v. Forest Cty. Enters., 2016 U.S. Dist. LEXIS 28038, at *43-45 (E.D.N.Y. Mar. 4, 2016).  Moreover, plaintiff does not allege that

the unnamed therapist failed to provide services and used the SESIS entries to cover that fact up. Also, plaintiff does not identify what type of "therapist" position the unnamed comparator holds. DOE employs various therapists that perform separate and distinct functions under wholly different titles. The Complaint fails to plead that this other "therapist" shared plaintiff's actual position (occupational therapist), supervisor, or job duties, and thus they cannot be deemed similarly situated "in all material respects."  See Shumway 118 F.3d at 63; Mohan v. City of New York, 2018 U.S. Dist. LEXIS 130933, at *30-34 (S.D.N.Y. Aug. 3, 2018) (same title, alone, insufficient to establish comparator is similarly situated, where "[p]laintiff fails to detail the specific work duties, seniority level, or performance" of the comparator). Moreover, plaintiff does not claim that DOE possessed any evidence of the unnamed therapist's alleged misconduct, as they did with plaintiff.  See Shumway 118 F.3d at 63-65.  Nor does the Complaint allege that plaintiff has any basis for knowing whether this other employee was investigated or disciplined.

It need only be added that the Complaint notably omits any factual allegation regarding defendants' knowledge of this purported comparator's sexual orientation.  Without knowledge of plaintiff's sexual orientation or this purported comparator's, there can be no possible inference that any difference in treatment was because on this unknown characteristic. As such, plaintiff's sexual orientation discrimination claim must be dismissed.

## C.      Retaliation Claims Fail.

A prima facie case of retaliation requires the plaintiff show a protected activity, an adverse action, and a causal connection between the two.  Cadet-Legros v New York Univ. Hosp. Ctr., 135 A.D.3d 196, 206 (1st Dep't 2015).  Here, the Complaint itself belies any causal connection between plaintiff's complaint in January, 2017, and her termination.  First, this complaint of completely unspecified "disparate treatment," does not constitute protected activity upon which a retaliation claim may be based.  See Kelly v. Howard I. Shapiro & Assocs.

Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013); Rosioreanu v. City of New York, 526 F. App'x 118, 120 (2d Cir. 2013) (complaints not protected activity because plaintiff never explicitly referred to gender or sex discrimination, and none of the activities mentioned involved "quintessentially gender-based conduct."); Moore v. City of New York, 2018 U.S. Dist. LEXIS 38359, at *13 (S.D.N.Y. Mar. 8, 2018) ("The law is clear that such a cursory reference to an unexplained feeling of generic 'discrimination' is, by itself, insufficient to place an employer on notice of a protected complaint."). Moreover, the genesis for plaintiff's January, 2017, complaint was her claim that prior to the meeting AP McCrosson had accused plaintiff of "not servicing her students."  Complaint ¶¶ 46-47.  It was this identical complaint, which plaintiff also attributes to AP McCrosson, that initiated the OSI investigation, which substantiated the allegation against plaintiff.  Id. ¶ 67.  This continuous course of conduct is absolutely fatal to plaintiff's retaliation claim.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001); Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 129 (1st Dep't 2012) ("an employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct").  The same is true with regard to plaintiff's September 20, 2017, letter, which was sent only after plaintiff had received the substantiated OSI Report and request to attend the "Due Consideration" meeting regarding her misconduct.  See Complaint ¶¶ 82-84.  This is a complete end to plaintiff's retaliation claims.

## POINT III

## ALL STATE LAW CLAIMS MUST BE DISMISSED.

**A.** **Plaintiff Lacks Standing to Sue for an Alleged Breach of the CBA.**

Plaintiff's contract claims must fail.  It is well-settled that

> Under . . . a collective bargaining agreement the union represents all the employees as to all covered matters and each individual employee in becoming a beneficiary to the contract gives up to the union, as his representative, his individual right to sue on or litigate as to the contract.

Chupka v. Lorenz-Schneider Co. Inc., 12 N.Y.2d 1, 5 (1962).  As such, "[a] union member has no individual rights under a collective bargaining agreement which he can enforce against his employer except through the union."  Berlyn v. Bd. of Educ., 80 A.D.2d 572, 573 (2d Dep't 1981).  The only exception to this rule is where the employee establishes that the union breached its duty of fair representation.  See Sapadin v. Bd. of Educ., 246 A.D.2d 359, 360 (1st Dep't 1998).  In all other circumstances, however, the employee is bound to the decisions of the union with regard to the CBA.

Here, the Complaint claims that DOE breached the CBA by providing plaintiff with post-termination process, rather than pre-discharge grievance review.  Complaint ¶¶ 135, 213-16.  As addressed above, plaintiff lacks standing to sue for any alleged breach of the CBA, that power lies exclusively with her union, the UFT.  The UFT chose not to pursue these claims, and Plaintiff lacks standing to bring this suit seeking enforcement of the CBA.  Thus, these claims must be dismissed.  Berlyn, 80 A.D.2d at 573.

Moreover, the Complaint does not allege that UFT failed to provide Plaintiff with fair representation or acted in bad faith.  Indeed, according to the Complaint, UFT provided Plaintiff with an individualized and comprehensive review of her grievance, including litigating the grievance at the "due consideration meeting," and, later, at both the school-level and before the Chancellor.  It is simply that Plaintiff disagrees with the union's decision not to proceed to arbitration and their interpretation of the CBA's termination grievance procedures.  See Complaint ¶¶ 110, 135, 213-16. This does not constitute a violation of the duty of fair

representation as a matter of law.  See Sapadin, 246 A.D.2d at 359.[6]  In any event, because Plaintiff has not established that UFT violated their duty of fair representation in choosing not to pursue her disputes at arbitration, she lacks standing to bring this suit seeking enforcement of the CBA, and her claims must be dismissed.  Berlyn, 80 A.D.2d at 573.

**B.     Contract Claims Must be Dismissed for Failure to Name a Necessary Party.**

CPLR § 1003 provides that an action should be dismissed without prejudice if a party fails to join a necessary party.  Pursuant to CPLR § 1001(a), necessary parties are defined as "[p]ersons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action," and further states that such necessary parties "shall be made plaintiffs or defendants."  The Supreme Court has held that the Due Process Clause requires intervention of those whose interests may be affected by a lawsuit; if such persons are not joined, then they can bring a subsequent lawsuit collaterally attacking the initial judgment.  Martin v. Wilks, 490 U.S. 755 (1989); McGuinn v. City of New York, 219 A.D.2d 489, 490 (1st Dept. 1995).

In the present matter, Plaintiff brings suit against DOE alleging, among other things, breach and tortious interference[7] with the CBA between UFT and DOE.  See Complaint ¶¶ 135, 213-23.  Indeed, plaintiff explicitly argues that UFT has erroneously interpreted provisions of the contract with regard to Plaintiff's post-termination review.  Id. ¶¶ 110, 135.  As addressed in the previous section above, plaintiff can only bring suit under the CBA if she shows a breach of UFT's duty of fair representation.  As such, if this action were to continue, the rights

---

[6] The union's belief that Plaintiff is only entitled to post-discharge grievance review is certainly reasonable, given the CBA's explicit provision providing for this exact process. CBA, Art. 19.

[7] A party to the contract at issue also cannot be liable for tortious interference with that very contract.  See Koret v. Christian Dior, 161 A.D. 156, 157 (1st Dep't 1990).

of UFT would be inevitably and inequitably affected, and thus UFT is a necessary party to this action. See Brancato v. N.Y. State Bd. of Real Prop. Servs., 7 A.D.3d 865, 867 (3d Dep't 2004) (citing CPLR § 1001(a)). UFT has a fundamental due process right to notice and an opportunity to be heard concerning any allegation that it provided deficient and arbitrary representation to one of its members. See, Sch. Transp. Org. for Parents v. Harpursville Cent. Sch. Dist., 50 Misc. 3d 478, 482 (Sup. Ct. Broom Co., Sept. 28, 2015). Plaintiff's failure to include UFT as a defendant demands dismissal of her claims.

**C.    CSL § 75-b Claim Must be Dismissed.**

Plaintiff cannot establish a whistleblower retaliation suit under CSL § 75-b.[8]    As an initial matter, any CSL § 75-b claim must be dismissed because plaintiff is covered by a union contract. CSL § 75-b(3). Plaintiff has not exhausted her administrative remedies, the grievance and arbitration process of the CBA. See Cantres v. Board of Education, 145 A.D.2d 359 (1st Dep't 1988); Ehrlich v. Department of Education, 2013 N.Y. Misc. LEXIS 5202, at *8 (Sup. Ct. N.Y. Co. Nov. 7, 2013). The Complaint also omits any allegation that plaintiff reported any "improper governmental action" consisting of "a violation of any federal, state, or local law, rule or regulation." CSL § 75-b(2)(a). Plaintiff therefore lacks any protected activity upon which to base her whistleblower claim, and for this reason as well it must be dismissed.[9]

**POINT IV**

**IN THE EVENT THAT DEFENDANTS' MOTION IS DENIED, DEFENDANTS SEEK A STAY OF THIS ACTION.**

---

[8] CSL § 75-b claims cannot be brought against defendants in their individual capacities and they must be dismissed. Moore v. Co. of Rockland, 192 A.D.2d 1021, 1024 (3d Dep't 1993).

[9] The City is not a proper party to this action, and the claims against it should be dismissed. The City is a distinct entity separate from the DOE, and there are no allegations specific to the City in the Complaint. See Perez v. City of New York, 41 A.D.3d 378 (1st Dept. 2007).

- 23 -

As plaintiff has already commenced an Article 78 proceeding challenging her termination, and alleged that it violated her due process rights, her rights under the CBA, and was the result of discriminatory and retaliatory animus, defendants seek a stay of this matter in the event that the instant motion is denied. See Petition ¶¶ 73, 74, 76, 80, 82-83, 86, 87, 94, 97.

"A court has the inherent power to stay an action based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." See Rattner v. Bd. of Trustees, 611 F. Supp. 648, 653 (S.D.N.Y. 1985) (staying federal action because facts pled in Complaint were "inextricably intertwined" with plaintiffs' Article 78 cases). In this case, a stay is warranted as the State Court is already reviewing the basis for plaintiff's termination, the process she received, whether defendants breached the CBA, as well as plaintiff's suggestion that this conduct was caused by discriminatory or retaliatory animus. See Younger v. Harris, 401 U.S. 37, 43 (1971); Spargo v. New York State Comm'n on Jud. Conduct, 351 F.3d 65, 77-79 (2d Cir 2003), cert. den., 541 U.S. 1085 (2004) (stay of the action warranted pursuant to Younger, where plaintiffs had concurrent Article 78 proceedings which would allow review of plaintiffs' constitutional claims on the merits, including the validity of the disciplinary charges).

The instant Complaint presents nearly identical factual allegations as the Petition, and both include the same Due Process, breach of contract, discrimination, and retaliation claims. Compare Complaint with Petition, Exhibit "8." Defendants have moved to dismiss plaintiff's Article 78 Petition on the grounds that, inter alia, plaintiff failed to exhaust her contractual remedies, lacks standing to sue for breach of the CBA, failed to name a necessary party, and failed to state a cause of action – as they have here. Complaint ¶ 112. Accordingly, a stay of this action pending the outcome of plaintiffs' Article 78 proceeding is warranted.

## CONCLUSION

For the above reasons, defendants respectfully request that their motion to dismiss be granted, that the Complaint be dismissed in its entirety, that the relief requested be denied in all respects, that judgment be entered for defendants, that defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper, and, alternatively, that the Court stay this matter pending resolution of plaintiff's Article 78 proceeding.

Dated:          New York, New York
                August 20, 2018

                                    **ZACHARY W. CARTER**
                                    Corporation Counsel of the
                                        City of New York
                                    Attorney for Defendants
                                    100 Church Street, Room 2-109(h)
                                    New York, New York 10007-0261
                                    (212) 356-1180
                                    ccoyne@law.nyc.gov


                        By:      _____/s/_____
                                    Christopher Coyne
                                    Assistant Corporation Counsel



**ALAN M. SCHLESINGER,**
**CHRISTOPHER COYNE**
   Of Counsel